# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **KELVIN A. CANADA,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:13cv00322 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **RANDELL MATHENA,[1] et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff, Kelvin A. Canada, an inmate incarcerated at Red Onion State Prison, ("ROSP") in Pound, Virginia, filed this action pro se for monetary damages, as well as injunctive relief under 42 U.S.C. § 1983 against the warden at ROSP, Randall Mathena, and Virginia Department of Corrections, ("VDOC"), Officers Lt. Anthony Mullins, Lt. Still, Sgt. J. Kiser and Lt. Steve Franklin. Canada asserts claims based on violations of his Eighth Amendment right to be free from cruel and unusual punishment.[2] Jurisdiction over this matter is based upon 28 U.S.C. § 1331. The matter is before the undersigned on the Motion For Summary Judgment filed by the defendants, (Docket Item No. 27) ("Motion"). This case is before the undersigned magistrate judge on referral, pursuant to 28 U.S.C. § 636(b)(1)(B). The plaintiff has responded to the Motion, and none of the parties have requested a hearing on the Motion. Based upon the pleadings, the briefs and the accompanying affidavits and exhibits, and for the reasons stated herein, I recommend that the Motion be granted.

---

[1] It appears from the record that Warden Mathena spells his first name Randall.

[2] By order entered December 19, 2013, the court dismissed Canada's Fourteenth Amendment due process claim pursuant to 28 U.S.C. § 1915A(b)(1). (Docket Item No. 16).

## I.  Facts

In his sworn Complaint, (Docket Item No. 4) ("Complaint"), Canada alleges that, on March 30, 2013, he was placed on strip cell status by defendants Sgt. J. Kiser, Lt. A. Mullins and Lt. Still for covering his cell door window.  (Complaint at 5.)  He remained on strip cell status from March 30, 2013, through April 1, 2013.  (Complaint at 5.)  Canada alleges that, during this time, he was denied a toothbrush, toothpaste, soap, toilet paper, a mattress, sheets, a blanket, a t-shirt, socks, shoes and pants, resulting in an inability to brush his teeth, wash his face or body, shower, wash his hands before eating meals, wipe himself after using the toilet facilities, receive any clean laundry, receive his mattress or receive any clothing to keep himself warm from the cold cell for two days.  (Complaint at 5-6, 13-14.)  Canada alleges that the cell, No. C-318, was "freezing cold," and all he had to wear was a pair of boxer shorts.  (Complaint at 13, 14.)  He further alleges that he could not sleep due to the cell's extreme cold temperatures.  (Complaint at 14.)  Canada states that, although Lt. Franklin was not present on March 30, 2013, he worked as the Building Lieutenant the following day and became aware of his status, but failed to intervene, despite knowledge that Canada had not been disruptive since being placed on strip cell.  (Complaint at 13.)

All of the defendants have provided affidavits in support of the Motion. According to Sgt. J. Kiser, on March 30, 2013, at approximately 1:00 p.m., he was called to C-3 pod, where Canada had covered his cell door window.  (Docket Item No. 28-3, ("Kiser Aff."), at 1); (Docket Item No 28-5, ("D.A. Still Aff."), at 1.) Only after being given several orders to uncover the window, did Canada comply. (Kiser Aff. at 1.)  Lt. D.A. Still approved the placement of an institutional

-2-

disciplinary charge of "Tampering With Security Equipment or Devices" by Sgt. Kiser against Canada. (Kiser Aff. at 1; D.A. Still Aff. at 1.) Sgt. Kiser obtained permission from Unit Manager Swiney to place Canada on strip cell status. (Kiser Aff. at 1.) Lt. D.A. Still, the Officer-in-Charge of Canada's housing unit on that day, recommended the removal of Canada's property, which Unit Manager Swiney approved. (D.A. Still Aff. at 1.)

According to Lt. Still, pursuant to established operating procedures, offenders are assigned to strip cell status when their actions pose a physical threat to themselves or others. (D.A. Still Aff. at 2.) A cell may be partially or totally stripped of personal items the offender could use to harm himself or others or which may create a health hazard. (D.A. Still Aff. at 2.) The offender's property is searched for contraband and to determine if he has fashioned some type of weapon. (D.A. Still Aff. at 2.) According to Lt. Still, this practice is especially important when an offender has concealed his actions from security staff by covering his cell window. (D.A. Still Aff. at 2.) Lt. Still stated that temperatures in the housing units routinely are monitored, and a review of the logbook for Canada's housing unit reflects an entry on March 30, 2013, at 5:55 p.m., reflecting a temperature of 71 degrees and an entry on March 31, 2013, at 6:00 a.m., reflecting a temperature of 70 degrees Fahrenheit. (D.A. Still Aff. at 2.) An entry on March 31, 2013, at 5:50 p.m. reflects a temperature of 71 degrees Fahrenheit. (D.A. Still Aff. at 2.)

According to Sgt. Kiser, he gave Canada several orders to back up to the cell door to be restrained so officers could enter the cell and retrieve his property, but Canada refused to comply. (Kiser Aff. at 1-2.) Only after Lt. Still came into the

-3-

C-3 pod and gave Canada a direct order to allow officers to restrain him, did he comply. (Kiser Aff. at 2.) Canada's property was removed from his cell and searched for contraband in front of his cell, but no contraband was found. (Kiser Aff. at 2.) Sgt. Kiser claims that he attempted to return the property to Canada at approximately 3:00 p.m. on March 30, 2013, but he refused to accept it. (Kiser Aff. at 2.) Several more attempts to return Canada's property were made, but he continued to refuse, stating that he "ain't taking shit back from this break." (Kiser Aff. at 2.) The following day, Sunday, March 31, 2013, Sgt. Kiser offered the return of Canada's property on several more occasions, but he continued to refuse, stating that he would not take anything from B-Break. (Kiser Aff. at 2.) Sgt. Kiser stated that Canada accepted his property from officers on the A-Break shift on April 1, 2013. (Kiser Aff. at 2.) Sgt. Kiser has provided the court with two Internal Incident Reports reflecting the same. (Docket Item No. 28-3 at 4-6.) Canada agrees that he accepted his property on April 1, 2013, but he denies that he was ever offered his property by anyone before that time.

According to L.A. Mullins, the Inmate Hearings Officer at ROSP, pursuant to VDOC Operating Procedure, ("OP"), 861.1, Offender Discipline, the Disciplinary Offense Report is to be served on an offender as soon as possible after removal from strip cell status, but no later than midnight of the following working day. (Docket Item No. 28-2, ("L.A. Mullins Aff."), at 1-2.) L.A. Mullins stated that he dismissed the institutional charge against Canada on April 9, 2013, because the notice of hearing had not been timely served in accordance with OP 861.1. (L.A. Mullins Aff. at 2.)

-4-

Lt. A. Mullins, the Officer-in-Charge of A & B Buildings, B-Break Dayshift, on March 30, 2013, stated that he learned that Sgt. Kiser had placed two offenders on strip cell that day, so he walked over to C Building in case his assistance was needed. (Docket Item No. 28-4, ("A. Mullins Aff."), at 1-2.) Lt. A. Mullins stated that he was present when Canada was removed from his cell to retrieve his property, but he was not personally involved in the decision to place him on strip cell status. (A. Mullins Aff. at 2.)

ROSP is an administrative segregation facility housing inmates who are classified as the highest security risks and are some of the most violent offenders in the VDOC. (Docket Item No. 28-1, ("Mathena Aff."), at 2.) Many ROSP inmates require segregation because they are disruptive, assaultive, have severe behavioral problems, demonstrate predatory behavior and are escape risks. (Mathena Aff. at 2.) According to Mathena, Canada is an extremely assaultive inmate, and correctional officers must exercise extreme caution in their interactions with him. (Mathena Aff. at 2.) Employees may use all necessary and suitable means to maintain control, prevent escapes, minimize the risk of staff and inmate injury and ensure the safe and orderly operation of the prison, including the use of strip cells. (Mathena Aff. at 2.) Mathena stated that the use of strip cells is a necessary and effective security measure. (Mathena Aff. at 3.) An offender's property may be restricted or removed when deemed necessary to ensure his safety and/or the security of the institution. (Mathena Aff. at 3.) Strip cells are never to be used for vindictive or retaliatory purposes, and they are never used as punishment. (Mathena Aff. at 2.) According to Mathena, security staff at ROSP do not abuse the use of strip cells. (Mathena Aff. at 3.) Whenever it is necessary to assign an offender strip cell status or modified strip cell status, the assignment is well

-5-

documented and the situation is monitored appropriately. (Mathena Aff. at 3.) Mathena stated that offenders remain on strip cell only until their behavior is brought under control and no longer poses a threat to security and orderly operations. (Mathena Aff. at 3.)

Mathena stated that he had no personal involvement in Canada's assignment to strip cell status on March 30, 2013. (Mathena Aff. at 2.) However, on May 16, 2013, Mathena provided a Level I response to a Grievance submitted by Canada regarding this strip cell assignment, stating that he learned security staff had instructed Canada to uncover his cell door window several times, but he refused, resulting in his property being removed from his cell and searched for contraband. (Mathena Aff. at 2.) Once Canada's disruptive behavior ceased and his property was searched, Canada was permitted his property items. (Mathena Aff. at 2-3.) He stated that prison records showed that Canada could have received his property back the same day it was taken, but he refused it until April 1, 2013. (Mathena Aff. at 3.) According to Mathena, if an offender refuses to accept property items, security staff will not force it into his cell. (Mathena Aff. at 3.) Based on these facts, Mathena found no violation of policy, and he determined that Canada's Grievance was unfounded. (Mathena Aff. at 3.)

## II. Analysis

Pursuant to Federal Rules of Civil Procedure Rule 56(a), the court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *See, e.g.,*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Inc.*, 475 U.S. at 587-88; *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross*, 759 F.2d at 364; *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). In other words, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed." *Miller v. Leathers*, 913 F.2d 1085, 1087(4th Cir. 1990) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

Canada alleges that the defendants violated his rights under the Eighth Amendment to the United States Constitution. More specifically, he alleges that the defendants violated the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment by sadistically keeping him on strip cell status for two days without sufficient justification, during which time he was denied the opportunity to (1) brush his teeth, as he was denied a toothbrush and toothpaste; (2) wash his face or body, as he was denied soap; (3) receive any clean laundry; (4) receive his mattress; (5) receive any shoes, a t-shirt or socks to keep himself warm from his cold cell; and (6) wipe himself after using the toilet, as he was denied

-7-

toilet paper. An inmate may bring an Eighth Amendment claim based on either (1) conditions of confinement; or (2) use of excessive force. The court construes Canada's Complaint as alleging a conditions-of-confinement claim. While the court does not construe the Complaint as alleging a use of excessive force claim, the defendants have done so. Even if the court were to construe Canada's Complaint as raising such a claim, given his status as a pro se litigant, it could not withstand the defendants' Motion for Summary Judgment. I so find because, even assuming that Canada was placed on strip cell status for no reason, as he contends, he does not claim that the restraints used merely to move him from his regular cell to the strip cell caused any pain or injury to him. Chief Judge Glen E. Conrad of this court held in *Holley v. Johnson*, 2010 WL 2640328, at \*14-15 (W.D. Va. June 30, 2010), that the temporary use of ambulatory restraints, even if the inmate no longer was disruptive, did not constitute excessive force given the de minimis nature of the inmate's injuries.

## A. *Respondeat Superior Liability & Supervisory Liability*

Before delving into the merits of Canada's claim, the court notes that Canada has failed to allege that Warden Mathena had any direct participation in the strip cell incident at issue. Seeking to impose liability based upon a *respondeat superior* theory is barred under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978); *Dillon v. Murray*, 853 F. Supp. 199, 204 (W.D. Va. 1994). However, if a plaintiff does not claim a direct involvement on the part of the defendant in the alleged violation, he may still show that the constitutional deprivation was caused by the exercise of a policy or custom for which the defendant was responsible. *See Dillon*, 853 F. Supp. at 204; *see also*

*Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133, 1143 (4th Cir. 1982). While Canada alleges in his response to the Motion that Mathena is responsible for ensuring that all prison policies are adhered to by his subordinates, he has not produced any evidence that Mathena was responsible for developing the use of force policy regarding strip cells, which was in existence at the time of the alleged incident. Therefore, I find that liability may not be imposed upon Mathena under a *respondeat superior* theory, and I recommend that the court grant summary judgment in favor of Mathena on Canada's claim.

Similarly, Canada has failed to produce any evidence that Lt. A. Mullins was personally involved in the decision to place him on strip cell status or in any other aspect of this incident. In his response to the Motion, he alleges that Lt. Mullins, as an "officer-in-charge," is a supervisor of the day shift B-Break and, therefore, he is responsible for the actions of his subordinates. He further claims in his response to the Motion that Lt. Mullins knew that he had been on strip cell much beyond two hours before his shift changed on March 30, 2013, at 6:00 p.m., but failed to investigate why he remained on strip cell, despite his knowledge that strip cell status is only supposed to last two hours. In his affidavit, Lt. Mullins confirmed that he was the officer-in-charge of A and B Buildings, B-Break Dayshift, on March 30, 2013. Lt. Mullins stated that he had heard that Sgt. Kiser had to place two inmates on strip cell status that day, so he walked over to C Building, where Canada was housed, in the event that his assistance was needed. Lt. Mullins stated that he was present when Canada was removed from his cell so that his property could be retrieved, but he was not personally involved in the decision to place him on strip cell status. Given the undisputed fact that Lt. Mullins was not personally involved in the decision to place Canada on strip cell status, and the lack of any

-9-

evidence that he was responsible for developing the use of force policy regarding strip cells in existence at the time of the alleged incident, I find that liability may not be imposed upon Lt. A. Mullins under a *respondeat superior* theory. *See Monell*, 436 U.S. at 692-94. While supervisory liability may be imposed upon an individual under certain circumstances for his "tacit authorization" of the misconduct of a subordinate, such inaction being a causative factor in the resulting injuries, *Dillon*, 853 F. Supp. at 204, the evidence before the court shows that any supervisory authority Lt. A. Mullins had was over A and B Buildings, not C Building where Canada was housed. Therefore, I also find that liability may not be imposed upon Lt. A. Mullins under a theory of supervisory liability. All of this being the case, I recommend that summary judgment be granted in favor of Lt. A. Mullins on Canada's claim.

Canada also has failed to produce evidence that Defendant Lt. Steve Franklin was personally involved in the decision to place him on strip cell status and, in his Complaint, he admits that Lt. Franklin was not present when he was placed on strip cell status. However, Canada alleges in his Complaint that Lt. Franklin worked on March 31, 2013, as the Building Lieutenant and was aware of his strip cell status, but, nonetheless, failed to intervene, despite knowing that Canada had not been disruptive since his placement on strip cell. Likewise, in his response to the Motion, Canada alleges that Lt. Franklin was the C Building Supervisor on March 31, 2013, and knew that he had been on strip cell status since March 30, 2013, at 1:00 p.m. He further alleges that Lt. Franklin did nothing to investigate Sgt. Kiser's, his subordinate's, contention that he refused his property on March 31, 2013. Canada contends that if Lt. Franklin had so investigated, he would have discovered that his property was never inventoried or offered to him at

any time.  As with Warden Mathena and Lt. Mullins, I find that Lt. Franklin also is not liable under a theory of *respondeat superior* because he was not alleged to have participated in the decision to place Canada on strip cell status.  *See Monell*, 436 U.S. at 692-94.  I, likewise, find that he cannot be held liable under a theory of supervisory liability.  More specifically, when a plaintiff claims it was a supervisor's inaction which caused the constitutional injury, that inaction must rise to the level of reckless disregard, gross negligence or deliberate indifference in order to be actionable at law.  *See Dillon*, 853 F. Supp. at 204.  The Fourth Circuit has established a three-part test by which a supervisor may be held liable for the actions of a subordinate: (1) the supervisor must have actual or constructive knowledge that the subordinate was engaged in conduct posing a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's response to the conduct must be so inadequate so as to constitute deliberate indifference; and (3) the plaintiff must establish an affirmative link between the supervisor's inaction and the resulting injury.  *See Dillon*, 853 F. Supp. at 205.  In order to show that a subordinate's conduct posed a pervasive and unreasonable risk of harm, the plaintiff must produce evidence "that the conduct is widespread, or at least has been used on several different occasions."  *Dillon*, 853 F. Supp. at 205 (quoting *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984)).  In order to show the supervisor's deliberate indifference, the plaintiff must not rely on a single, isolated incident, but must show "continued inaction in the face of documented widespread abuses."  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan*, 737 F.2d at 373).

As Canada has produced no evidence that Lt. Franklin had actual or constructive knowledge of widespread abuse of the strip cell policy, by which

inmates are held for long periods thereon based upon false allegations of refusal of personal property, he cannot show that Lt. Franklin had actual or constructive knowledge that Sgt. Kiser was engaged in conduct posing a pervasive and unreasonable risk of constitutional injury. *See Dillon*, 853 F. Supp. at 205 (citing *Slakan*, 737 F.2d at 373-74). Moreover, it is well-settled that isolated incidents cannot form the basis for a supervisor's deliberate indifference. *See Shaw*, 13 F.3d at 799 (citing *Slakan*, 737 F.2d at 373). All of this being the case, I recommend that the motion for summary judgment be granted in Lt. Franklin's favor on Canada's claims.

Given the above recommended dispositions, only Sgt. J. Kiser and Lt. D.A. Still remain as potential defendants in this case. I now will turn to the merits of Canada's claim.

*B. Eighth Amendment Conditions-of-Confinement Claim*

The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment on convicted prisoners. *See* U.S. CONST. amend. VIII. Claims under the Eighth Amendment have two components: (1) an objective component, whether a prison official's alleged wrongdoing was "objectively harmful" enough to establish a constitutional violation, and (2) a subjective component, whether the official "act[ed] with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The showing required for each of these components varies with the context in which the plaintiff's claim arises, and the

-12-

nature of the objective component requires comparison to "contemporary standards of decency" in that context. *Hudson*, 503 U.S. at 8.

In the context of prison living conditions, an inmate must establish by a preponderance of the evidence that prison officials acted with deliberate indifference (subjective component) to a substantial risk of harm (objective component). *See Hudson*, 503 U.S. at 8. It is well-settled that "[t]o the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To prove deliberate indifference, the inmate must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measures" to alleviate the risk. *See Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994). "[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment [conditions] claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (omitting internal quotations).

I find that Canada fails to produce sufficient evidence to show that any of the strip cell conditions caused him anything more serious than temporary discomfort and embarrassment, thereby failing to demonstrate the requisite objective component of his claim. More specifically, the only allegation Canada raises in his Complaint regarding any "injury" resulting from the above-specified

conditions of the strip cell to which he was confined for two days,[3] is that he could not sleep due to the "extreme coldness" of the cell. However, Canada fails to allege any physical or emotional injury resulting from such lack of sleep, nor does he allege that he sought any medical treatment for such or provide the court with any medical records from which the court may deduce any such injury occurred. Even assuming that all of the conditions Canada alleges to have existed over the two days he was on strip cell status did, indeed, exist, I, likewise find that Canada has failed to provide the court with any evidence of any injury, either physical or emotional, resulting from any of these conditions. For instance, Canada does not allege any physical or emotional injury due to not having toilet paper to wipe himself after using the toilet facilities, he does not allege any injuries from being unable to wash his face or body for two days, and he does not allege any injury due to lacking a mattress or bed linens.

I note that the courts have rejected Eighth Amendment claims for lack of a significant injury from living conditions far harsher than those Canada alleges suffering for two days on strip cell status at ROSP. *See Beverati v. Smith*, 120 F.3d 500, 505 n.5 (4th Cir. 1997) (noting that inmate's alleged confinement for six

_____
[3] The court notes that Canada was held on strip cell status for two days. The defendants, however, argue that because he was offered the return of his property at approximately 3:00 p.m. on March 30, 2013, they were responsible for such status for only two hours. The remainder of the time that Canada was on strip cell status was due to his refusing the return of his property, which, by definition, would have terminated the strip cell status. In any event, I must view the facts alleged in the light most favorable to Canada, who claims that he was never offered his property back at any time before April 1, 2013, when he did accept it after a shift change. Be that as it may, however, even analyzing the conditions that Canada claims to have endured for the entire two days on strip cell status, regardless of who was the cause of his placement or remainder on such status, the ultimate result is the same. Thus, I will not spend any additional time addressing the issue of whether Canada extended his stint on strip cell status by his own doing.

-14-

months in hot cells, infested with vermin and smeared with urine and feces, with only cold food in smaller portions and infrequent changes of linens did not state Eighth Amendment claim with no showing that the conditions resulted in serious physical or emotional injury); *Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (no violation where inmate not given soap, toothpaste or toothbrush for 10 days and no toilet paper for five days); *Schaeffer v. Schamp*, 2008 WL 2553474, at *5-6 (W.D. Pa. June 25, 2008) (claim that inmate was placed in "hard cell" for 10 days with no mattress, pillows, no soap, no toilet paper and no running water did not constitute cruel and unusual punishment); *Lane v. Culp*, 2007 WL 954101, at *5 (W.D. Pa. Mar. 28, 2007) (allegation that inmate was denied running water for period of days and forced to sleep on floor without clothing or bedding for seven days failed to state constitutional claim); *Cooper v. Shaw*, 2010 WL 5553676, at *2-3 (N.D. Fla. Dec. 7, 2010) (noting that courts addressing the issue of failure to provide hygiene items, including mattresses and blankets, for a temporary period of time have found no constitutional violation).

For the above-stated reasons, I find that Canada has failed to present evidence to create a genuine dispute of material fact regarding the existence of any serious or significant physical or emotional injury resulting from the challenged conditions of confinement. Thus, I will dispense with any discussion of whether Canada has provided evidence to meet the subjective component of his conditions-of-confinement claim, and I recommend that the court grant summary judgment in the defendants' favor on such claim.

-15-

C. *Qualified Immunity*

The defendants argue that they are entitled to the defense of qualified immunity, as there are no allegations of conduct which violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). When a government official properly asserts the defense of qualified immunity, he is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established such that it would not have been clear to such a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009);[4] *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Here, because I already have found that, even taking the facts in the light most favorable to Canada, he does not present the elements necessary to state a violation of his Eighth Amendment constitutional rights based on the conditions of his confinement while on strip cell status. I recommend that the court grant the defendants' Motion on qualified immunity grounds, as well.

---

[4] The Supreme Court's decision in *Pearson* overruled that part of *Saucier* which mandated that courts conduct the two-step qualified immunity inquiry in sequential order. *See Pearson*, 555 U.S. at 236; *see Saucier*, 533 U.S. at 201. Courts now "have the discretion to decide whether that procedure is worthwhile" and "determine the order of decision making that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242 (821). Otherwise, *Saucier* remains as binding precedent.

-16-

*D. Injunctive Relief*

Lastly, Canada seeks injunctive relief. "The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). To be entitled to permanent injunctive relief, a plaintiff must demonstrate: (1) that he has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the parties, the remedy is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982).

Canada seeks injunctive relief to stop ROSP and the entire VDOC from sadistically misusing / abusing permanently (1) five-point restraints; and (2) ambulatory restraints. However, I find that the defendants correctly argue that because neither five-point restraints nor ambulatory restraints were utilized on Canada during the alleged incident, Canada has presented no evidence to support a claim for the injunctive relief sought. Therefore, I recommend that Canada's request for such injunctive relief be denied.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

-17-

1. Canada fails to sufficiently demonstrate liability against Defendant Warden Mathena under a theory of *respondeat superior* liability;

2. Canada fails to sufficiently demonstrate liability against Defendant Lt. A. Mullins under either a theory of *respondeat superior* liability or supervisory liability;

3. Canada fails to sufficiently demonstrate liability against Defendant Lt. Steve Franklin under either a theory of *respondeat superior* liability or supervisory liability;

4. There is no genuine dispute of material fact which prevents the entry of summary judgment in favor of the defendants on Canada's Eighth Amendment conditions-of-confinement claim;

5. There is no dispute of material fact which prevents the entry of summary judgment in the defendants' favor on Canada's conditions-of-confinement claim based on qualified immunity; and

6.  Canada is not entitled to the permanent injunctive relief sought.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that summary judgment be entered in favor of Defendants Warden Mathena, Lt. A. Mullins and Lt. Steve Franklin on Canada's claims, as Canada fails to sufficiently demonstrate liability against them based upon *respondeat superior* or supervisory liability.  I further recommend that the court grant the motion for summary judgment filed on behalf of the defendants as to Canada's claim based on the conditions of his confinement while on strip cell from March 30, 2013, through April 1, 2013. Lastly, I

recommend that summary judgment be granted in the defendants' favor on Canada's request for permanent injunctive relief.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 18ᵗʰ day of July, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-19-